375 S.W.2d 355 (1964)
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Appellant,
v.
Murrell D. FOSTER, Appellee.
No. 5614.
Court of Civil Appeals of Texas, El Paso.
January 8, 1964.
Rehearing Denied February 5, 1964.
*356 Stubbeman, McRae, Sealy & Laughlin, Rush Moody, Jr., Midland, for appellant.
Warren Burnett and Bill Alexander, Odessa, for appellee.
CLAYTON, Justice.
This is a workmen's compensation case in which the plaintiff recovered a judgment against defendant, based on jury findings, for total and permanent loss of use of both feet. Plaintiff alleged in his petition that "he is entitled to recover $35.00 per week for 401 weeks for his injuries and disability as provided by the Workmen's Compensation Act." In his voir dire examination of the jury panel plaintiff's attorney told the panel: "We contend in this case that he (plaintiff) has suffered what is known in the law as the total loss of use of both of his feet, and is, therefore, entitled to recover the maximum benefits under this policy. That is to say, $35.00 a week for a total period of four hundred and one weeks." Plaintiff was interrupted at this point by counsel for defendant who, out of the presence and hearing of the jury, dictated a motion for mistrial "on the sole basis that the attorney for the plaintiff advised the jury of the legal effects of their answers to the issues which would be submitted in this case." The trial court reserved ruling upon this motion and the case proceeded to trial and was submitted to the jury on special issues. The jury, in answer to such issues, and under appropriate instructions, found that the injury to each of plaintiff's feet resulted in total loss of use of each foot from the day of the injury and that such loss of use of each foot was "permanent". Questions as to temporary and partial loss of use of each foot were unanswered. When the verdict was read by the court the attorney for defendant renewed his motion for mistrial, setting out that the prejudicial effects of the remarks made by plaintiff's counsel on voir dire had been demonstrated and that it was affirmatively shown that harm did result to the defendant from such prejudicial remarks. Thereafter the motion for mistrial was overruled by the court and judgment entered for plaintiff, to which action exception was taken and this appeal perfected.
Appellant directs his two points of error to the court's failure to grant his motion for mistrial based on the contentions that the attorney for the plaintiff had advised the jury of the legal effects of their answers to the issues which would be submitted in the case and that harm had resulted to the defendant therefrom. Appellant cites the case of McFaddin v. Hebert, 118 Tex. 314, 15 S.W.2d 213, a 1929 Commission of Appeals decision adopted by the Supreme Court. The following is quoted from that opinion:
"Clearly, the prime object, purpose, and intent of the law for submitting *357 cases on special issues is to remove the jury from any bias in favor of, or prejudice against, either party to the suit, to relieve them from the duty of directly passing on who shall prevail in the suit, and to make it the duty of the jury to answer each question truly as they find the facts to be from the evidence, without regard to what the result of their answers may be. If the court or the attorney, or any one else, is allowed to tell the jury the legal result of the answers, and to appeal to them in argument to so frame their answers so as to accomplish a result rather than to answer the issues truly as they find the facts to be from the evidence, * * * the law providing for special issue verdicts would be an idle and vain thing." (Emphasis supplied.)
In the cited case the Court of Civil Appeals, in certifying the question which was answered by the Commission of Appeals, stated that after the special issues were submitted to the jury the plaintiffs' attorney in argument "told the jury that if they wanted to render a verdict in behalf of the plaintiffs, to answer said special issue (No. 1) `yes' * * *." This statement, and subsequent argument of the attorney, clearly required a finding of reversible error by the Commission of Appeals, and such finding was supported by the authorities quoted from by the Commission. But we find several features in the cited case which serve to distinguish it from the case at hand. For example, in the cited case, the special issues involved were already before the jury and the attorney was pointing out what the answer to each special issue should be in order to constitute a verdict for the plaintiffs. He even went to the extent of requesting the jury to take down the figures which they should give as their answers to the several special issues, and several of the jurors did take down the figures given, all over the strenuous objections of defendant's attorneys, which were overruled by the court. In the instant case, the jury had not heard the case or received the submitted issues, and could not have known, at the time the complained-of remarks were made, whether or not the remarks were relevant to any particular issue in the case. Further, it is a matter of some conjecture whether the wording of the special issues, when submitted, could have given those jurors who might have remembered the plaintiff's attorney's remarks any clue as to the meaning of the "$35.00 a week" and the period of "four hundred and one weeks" in connection with the answers to individual special issues. The jury merely answered that the loss of use of each foot was "permanent". In Texas Employers' Insurance Association v. Rigsby, 273 S.W.2d 681 (Tex.Civ.App., 1954; N.W.H.), the following is to be found:
"By its fifth point the appellant complains of the trial court's action in permitting counsel for plaintiff in the trial court, over its objection, to read to the jury that portion of plaintiff's original petition in which he alleged that he was entitled to recover 401 weeks of Workmen's Compensation insurance at the rate of sixty percent of his average weekly wage, not to exceed $25.00 per week. At the beginning of the trial, before the voir dire examination of the jury, appellant's counsel moved the court to instruct counsel not to inform the jury that he was seeking insurance at the rate of $25.00 per week for a period of 401 weeks and that counsel be prevented from reading that portion of his petition to the jury. The reason for the motion, as stated, was that it was not proper for the jury to know the amount of money plaintiff was seeking or the rate of compensation he was seeking, since to do so would inform the jury of these facts or impart information to them with which they are not concerned, since the jury would then be informed of the legal effect of its findings. In support of this point the appellant relies upon the case of Ex parte Fisher, 146 Tex. 328, 206 S.W.2d 1000 by the Supreme Court. We are *358 unable to see any similarity between the instant case and that case. As we view the matter the portion of the pleadings complained of and read to the jury with the rest of the petition was a portion of the prayer which simply stated what the plaintiff was suing for. It was not improper to thus inform the jury, but if such an action could be regarded as improper, no harm resulted to the appellant so far as we can ascertain from this record. In fact, the jury by its answer to the issue inquiring how long his incapacity would continue did not answer any number of weeks but answered only `permanent'."
The Fisher case, referred to in the quotation above, is relied upon by appellant in the instant case. In the Fisher case the remarks complained of occurred in the opening argument to the jury by claimant's attorney after the court's charge had been submitted. The attorney began to explain to the jury certain legal distinctions and objection was made by opposing counsel and sustained by the court. Claimant's counsel then persisted in stating his position in the presence of the jury and after repeated adverse rulings by the court, finally resulting in counsel being cited for contempt. The actual ruling arrived at in the Fisher case by the Supreme Court was that the argument and conduct of counsel was peculiarly within the control, direction and jurisdiction of the trial court. There can be no doubt but what such is the law, and we do not find such ruling to be in conflict with the disposition we make of the case before us. In Texas Employers' Insurance Ass'n v. Logsdon, 278 S.W.2d 893 (Tex.Civ. App., 1954; Ref. N.R.E.), complaint was made that certain objectionable matters in plaintiff's pleadings were read to the jury and part thereof mentioned by counsel in argument. The Court held:
"* * * Appellee's original petition in general is in the usual form found in this type of case. As a part of his alleged cause of action, he pleaded the maximum weekly compensation rate of $25 for a period of 401 weeks * *. In our opinion, it was not reversible error in the case at bar to mention or refer to such weekly compensation rate in the presence of the jury or to have read that portion of the pleadings to the jury, if such pleadings were read to the jury." (Emphasis supplied.)
In the instant case it is not shown whether the allegation in plaintiff's petition, that claimant was entitled to recover $35.00 per week for 401 weeks, was read to the jury or not. If it were, it appears that under the Logsdon decision no reversible error would have occurred either in such reading or in mentioning plaintiff's contention to the jury. Both the Logsdon and the Rigsby decisions have been favorably cited or quoted from in numerous later Texas opinions. In any event, we do not feel that the statement made by counsel, at the time and under the circumstances here present, and phrased as such statement was, resulted in improperly advising the jury how they should answer issues that had not as yet been submitted to them.
The test to be applied in determining whether a possibly improper argument constitutes reversible error is set out in the opinion in Texas Employers' Insurance Association v. Rubush, 337 S.W.2d 501 (Tex. Civ.App., 1960; Ref. N.R.E.):
"The true test in determining whether reversible error is present is the degree of prejudice flowing from the argument, whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict. Texas Employers' Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W.2d 856; Rules 434 and 503.

*359 "Whether the argument influenced the verdict unfavorable to appellant is to be determined as a matter of our judgment in the light of the record as a whole. Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S.W.2d 115."
See also Walker v. Texas Employers' Insurance Association, 155 Tex. 617, 291 S.W. 2d 298 (Tex.S.Ct.1956).
No statement of facts accompanied the record in this case. From an examination of the available record we are of the opinion that the remarks of counsel on voir dire examination were not such as were reasonably calculated to cause and probably did cause the rendition of an improper verdict. Appellant's two points of error are therefore overruled and the judgment of the trial court is affirmed.